UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAKOTA CARLOS CLARK,

    Plaintiff,

v.                                                    Case No. 1:20-cv-728
                                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB) and supplemental security income (SSI).

On August 14, 2017, plaintiff filed applications for DIB and SSI, alleging a disability onset date of September 1, 2010.[1] PageID.56. Plaintiff listed his disabling conditions as epilepsy, muscle soreness, post traumatic stress disorder (PTSD), attention deficit disorder (ADD), and seizures. PageID.307. Prior to applying for benefits, plaintiff completed the 12th grade and had past employment as a stocker in a lumberyard, a produce worker, and an usher. PageID.308. The administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on June 10, 2019. PageID.56-70. This decision, which

---

[1] Plaintiff was 13 years old on the alleged onset date. PageID.294.

1

was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

3

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.     ALJ's DECISION

Plaintiff's applications failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 1, 2010, and that he met the insured status requirements of the Social Security Act through June 30, 2019. PageID.58.[2] At the second step, the ALJ found that plaintiff has severe impairments of a seizure disorder, borderline intellectual functioning, depression, anxiety, attention deficit hyperactivity disorder (ADHD), and PTSD. PageID.58. At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.59.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. He can never climb ladders, ropes, or scaffolds, work at unprotected heights, work with dangerous moving machinery, or perform commercial driving. He is limited to performing simple,

---

[2] "The claimant's earnings did not reach substantial gainful activity levels after the alleged disability onset date. He was not working at the time of the hearing, but he performed a job as a laborer in a store as an employee of Menard, Inc., in 2016 to 2019 (3D; 18E; hearing testimony). Annual earnings from this job totaled $8,472.09 in 2016 and $9,880.21 in 2017 (3D, p.9), and the highest quarterly earnings of 2018 in the second quarter totaled $3,005 (3D, p.3)." PageID.58.

4

routine, repetitive tasks, in a work environment free of fast-paced production requirements, and involving only occasional, simple work-related decisions and routine workplace changes. He can have occasional interaction with the general public.

PageID.62-63. The ALJ also found that plaintiff has no past relevant work for purposes of this disability claim. PageID.69.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the national economy. PageID.69-70. Specifically, the ALJ found that plaintiff can perform the requirements of occupations such as housekeeping (unskilled, light 400,000 jobs), stock clerk (unskilled, light 220,000 jobs), and office clerk (unskilled, light 190,000 jobs). PageID.70. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 1, 2010 (the alleged disability onset date) through June 10, 2019 (the date of the decision). PageID.70.

## III.   DISCUSSION

Plaintiff has raised errors related the residual functional capacity (RFC) determination and the vocational expert (VE) testimony.

**A. The ALJ's RFC findings are contrary to law and not supported by substantial evidence.**

**1. The ALJ failed to comply with 20 C.F.R. § 404.1520c by failing to properly consider the opinions of plaintiff's medical providers.**

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior

5

administrative medical findings in [the claimant's] record." 20 C.F.R. §§ 404.1520c(b) and 416.920c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).[3] If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. §§ 404.1520c(b)(3) and 416.920c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your

---

[3] The regulations explain "supportability" in the following terms: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

The regulations explain "consistency" in the following terms: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

6

case record." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

As one court observed, "[t]hese new regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources." *Hardy v. Commissioner of Social Security*, -- F. Supp. 3d. --, 2021 WL 3702170 at *4 (E.D. Mich. Aug. 13, 2021). Nevertheless, the new regulations set forth a minimum level of articulation for a reviewing court. *Id*.

### a. The medical provider's opinions should have been found fully persuasive consistent with 20 C.F.R. 404.1520c.

#### i.    Donald Horner, MA, LLP

Plaintiff contends that the ALJ's evaluation of Mr. Horner's opinions are not based on substantial evidence. Mr. Horner prepared an assessment of plaintiff's mental ability to perform work (Exh.15F, PageID.760-762), which was co-signed by Horner's supervising psychologist, Dr. Mary Hui-Wee, Ph.D. Mr. Horner also provided a transcribed oral statement in which he explained the basis for his opinions, which was also co-signed by Dr Hui-Wee (Exh. 17F, PageID.764-765). The ALJ addressed these opinions as follows:

> Donald Horner, M.A., a limited licensed psychologist, provided medical opinions on April 25 and April 29, 2019, as the claimant's treating psychologist, and I find his opinions persuasive in part, and unpersuasive in part, as follows (15F/17F). These opinions were provided with the supervision and signature of Mary Hui-Wee, Ph.D., a licensed psychologist, who did not personally treat the

7

> claimant (hearing testimony). The moderate social limitations opined by Mr. Homer are persuasive (15F, p.2), supported by explanation, and consistent with the other medical evidence showing anxiety affecting his social interactions and stress management (6F, p.4;13F, 16F). The opined marked limitation in the area of maintaining concentration, persistence and pace, the serious limitations in maintaining attention for two hours, sustaining ordinary routine, and accepting instructions from supervisors, and the inability complete a normal workweek and perform at a consistent pace opined by Mr. Horner are unpersuasive and not strongly supported by objective mental health findings (15F, pp.1-2). This lack of support for the opinion is indicated by the at least partial basis for this aspect of his opinion from the claimant's self-reported inability to work a full day (17F). These marked and serious limitations or inabilities to complete a normal workweek noted above are also not consistent with the medical evidence showing relatively stable symptoms of depression and anxiety without need for psychiatric hospitalization despite little or no mental health treatment (12F, p.4; 13F; 16F).

PageID.68-69. The ALJ's evaluation of Mr. Horner's opinion is supported by substantial evidence as referenced in the decision. Accordingly, this claim of error is denied.

### ii. Thomas Dunne, M.D.

Plaintiff points out that his treating neurologist Dr. Dunne, opined that he should not drive, should follow seizure precautions such as avoiding potentially hazardous activities, and that plaintiff might need assistance if he appeared oblivious or "zoned out." Plaintiff's Brief (ECF No. 15, PageID.788). Plaintiff contends that the ALJ disregarded these findings. *Id*.

The ALJ addressed Dr. Dunne's opinions as follows:

> Thomas Dunne, M.D., provided medical opinions on November 14, 2014, April 8, 2015, May 31, June 1, and June 19, 2017, August 30, 2018, and January 24, 2019, as the claimant's treating neurologist, and I find his opinions persuasive (5F, pp.9, 14, 27, 31; 7F, p.1; 18E, pp.4, 9, 11). He opined that the claimant should not drive and should follow seizure precautions such as avoiding potentially hazardous activities including exposure to heights and dangerous machinery (5F, pp.9, 14, 27, 31; 7F, p.1; 18E, pp.9, 11). On January 24, 2019, he also opined that the claimant may require assistance at work at times when he appears oblivious or "zoned out," but did not opine about the frequency or duration of such occurrences or the type of assistance that would be needed at these times (18E, p.4). Therefore, this aspect of his opinion is less persuasive and did not assist significantly with the assessment of the claimant's residual functional capacity. Dr. Dunne also provided letters to the claimant's employer regarding absences on particular days for treatment or recovery from symptoms that do not state a specific opinion about

ongoing work-related limitations such as the number of expected absences from work in a typical month due to symptoms or treatment (7F, p.2; 18E, pp.5-8, 10, 12).

PageID.68. The ALJ's evaluation of Dr. Dunne's opinion is supported by substantial evidence as referenced in the decision. Accordingly, this claim of error is denied.

### b. The ALJ's finding that the opinions of the non-examining physicians were persuasive is not supported by substantial evidence.

Plaintiff contends that the ALJ incorrectly found the opinions of two non-examining consultants, Dr. Jung Kim and neurologist Dr. Phillip M. Green to be persuasive. Plaintiff's Brief at PageID.789. Plaintiff contends that neither of these non-examining physicians had the full medical record for review. *Id.* Dr. Kim evaluated plaintiff's mental residual function capacity (RFC) and signed his opinion on April 3, 2018. PageID.127-129. Dr. Green evaluated plaintiff's physical RFC and signed his opinion on March 21, 2018. PageID.125-127. The ALJ entered her decision on June 10, 2019, about 14 to 15 months after Drs. Kim and Green entered their opinions. PageID.70.

The ALJ addressed these opinions as follows:

Jung Kim, M.D., a psychiatrist, provided an administrative medical finding based on a review of the record on April 3, 2018, which I consider persuasive (1A/2A, pp.8-9, 12-14). He found the claimant had moderate limitations in the abilities to interact with others and concentrate, persist, or maintain pace and mild limitations in the abilities to understand, remember, or apply information and adapt or manage oneself (1A, p.8). He specifically found that these moderate limitations applied to abilities involving detailed instructions, extended periods of attention and concentration, and interactions with the general public (1A, p.13). These limitations are reflected in the above residual functional capacity finding with greater specificity as to the most the claimant can do in a work setting despite his mental limitations. His finding is supported by explanation including reference to the claimant's treatment and psychological consultative examination discussed below (6F) and is consistent with the medical evidence including relatively stable symptoms without need for psychiatric hospitalization despite little or no mental health treatment (12F, p.4; 13F; l6F; hearing testimony).

9

> Phillip Green, a physician specializing in neurology, provided an administrative medical finding based on a review of the record on March 21, 2018, which I consider persuasive (1A/2A, pp. 11-12). He found the claimant had no exertional limitations but was limited to frequently climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, and avoiding all exposure to hazards of heights and hazardous machinery (1A, pp.11-12). These limitations are reflected in the above residual functional capacity finding, except the evidence is not consistent with any limitation in the ability to climb ramps or stairs and no supporting explanation is specifically provided for a limitation in this activity. His overall finding is supported by explanation including the need to avoid heights and hazards due to the risk of a grand mal seizure occurring on average three times per year (1A, p.12). His finding is generally consistent with the medical evidence including consistently normal neurologic evaluations including normal coordination, intact recent and remote memory, and normal strength and sensation (e.g., 3F, pp.3-4; 4F, p.5; 5F, p.8; 8F, p. 18; 10F, p.12; 12F, p.7).

PageID.67.

There will always be a gap between the time the agency experts review the record, give their opinions, and the time the hearing decision is issued. *See Kelly v. Commissioner of Social Security*, 314 Fed. Appx. 827, 831 (6th Cir. 2009). "Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Id*. (approving lower court's analysis). The issue on review is whether the evidence submitted after the state agency assessment fatally undermines the accuracy of that assessment. *Id*. Here, the ALJ reviewed all of the evidence submitted by plaintiff and explained why that evidence was consistent with the opinions of Drs. Kim and Green. Accordingly, plaintiff's claim of error is denied.

> **2. The RFC determination failed to consider all plaintiff's well-documented impairments as required by 20 C.F.R. § 404.1520a, SSR 98-6p and SSR 85- 15.**
>
> **B. The ALJ's hypothetical to the vocational expert (VE) did not accurately describe plaintiff's established limitations.**

Plaintiff's argument appears to contest both the ALJ's RFC determination and the hypothetical questions posed to the VE which are based upon that determination. The gist of

10

plaintiff's claim is that "[l]imiting him to simple, unskilled, repetitive tasks would not address the effects of [p]laintiff's established, work preclusive impairments." Plaintiff's Brief at PageID.791. Plaintiff states that "the record shows that the symptoms of his seizure disorder, anxiety and other mental impairments would cause him to be off task more than 15% of the work day even if he were limited to simple, routine work." *Id*. at PageID.790. Plaintiff contends that neither the RFC determination nor the hypothetical question posed to the VE included "any limitations for being off-task, being absent, or having a seizure or pseudo seizure in the workplace." *Id*. at PageID.791.

At step four, the ALJ determines the claimant's RFC, which is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). The ALJ determines the RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(e) and 416.920(e).

At step five, an ALJ determines whether a claimant possesses the capacity to perform substantial gainful activity that exists in the national economy. This determination must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779.

11

Plaintiff has failed to demonstrate an error requiring reversal. Here, the ALJ's RFC determination included a number of non-exertional limitations to accommodate plaintiff's severe impairments,

> He can never climb ladders, ropes, or scaffolds, work at unprotected heights, work with dangerous moving machinery, or perform commercial driving. He is limited to performing simple, routine, repetitive tasks, in a work environment free of fast-paced production requirements, and involving only occasional, simple work-related decisions and routine workplace changes. He can have occasional interaction with the general public.

PageID.62-63.

The ALJ summarized her findings as follows,

> In sum, the above residual functional finding is supported by prior administrative medical findings, medical opinions, and medical evidence discussed above (1A; 6F; 5F, pp.9, 14, 27, 31; 7F, p.1; 18E, pp.9, 11). The record does not support the claimant's allegations as to the limiting effects of his symptoms reasonably caused by his medically determinable impairments during the adjudicated period. As discussed above, the longitudinal evidence shows that the claimant's severe physical impairment is addressed by limitations to never climbing ladders, ropes or scaffolds, never working at unprotected heights or with dangerous moving machinery, and doing no commercial driving. The claimant's severe mental impairments are also addressed by the above residual functional capacity finding with limitations to simple, routine, repetitive tasks, no fast-paced production requirements, only occasional, simple work-related decisions and routine workplace changes, and only occasional interaction with the general public.

PageID.69.

The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb*, 368 F.3d at 633 (internal quotation marks and brackets omitted). This is precisely what the ALJ did in evaluating the medical record in this case. Based on this record, the ALJ's RFC assessment is supported by substantial evidence, as are the related hypothetical questions posed to the VE. If the ALJ's decision is supported by substantial evidence, it must be affirmed, even if this Court would decide the matter differently, and even if substantial evidence also supports the opposite

conclusion.  *Cutlip*, 25 F.3d at 286.  *See Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.") (internal quotation marks omitted).  Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated:  March 29, 2022              /s/ Ray Kent
                                    RAY KENT
                                    United States Magistrate Judge